IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 20–cv–03158–MDB

ROOFTOP RESTORATION & EXTERIORS, INC., a Colorado corporation,

 Plaintiff,

v.

NAUTILUS INSURANCE COMPANY,

 Defendant.

---

## ORDER

---

 This matter is before the Court on four motions: (1) "Defendant's Motion to Confirm Appraisal Award" (["Motion to Confirm"], Doc. No. 25); (2) "Plaintiff's Motion to Vacate or Partially Disregard Appraisal Award and Proceed to Trial on Limited Issues Not Resolved by Appraisal (Including Motion to Set Aside or Vacate Appraisal Award)" (["Motion to Vacate"], Doc. No. 23); (3) "Plaintiff's Motion to Amend Complaint" (["Motion to Amend"], Doc. No. 34); and (4) "Defendant Nautilus Insurance Company's Motion to Strike Plaintiff's Motion to Amend Complaint" (["Motion to Strike"], Doc. No. 38). Plaintiff has responded in opposition to the Motion to Confirm (Doc. No. 31), and Defendant has replied (Doc. No. 39). Defendant has likewise responded in opposition to the Motion to Vacate (Doc. No. 40), and Plaintiff has replied (Doc. No. 44). No other briefing has been filed as to the four pending motions, and the time to do so has lapsed.

**STATEMENT OF THE CASE**

The following facts are derived from the Complaint and the parties' briefing. Defendant Nautilus Insurance Company ["Nautilus," or "Defendant"] issued a property damage insurance policy to nonparty Fairway Plaza, LLC ["the Insured"], covering commercial property located at 522-586 South Academy Boulevard, Colorado Springs, Colorado 089190 ["the Property"]. (Doc. No. 3 at ¶¶ 5-6.) The policy period ran twelve months, from January 2018 until January 2019. (Doc. No. 25-1.) In August 2018, a hailstorm moved through Colorado Springs, causing substantial damage to the Property's roof. (Doc. No. 3 at ¶ 11.) The Insured hired Plaintiff Rooftop Restoration & Exteriors, Inc. ["Rooftop," or "Plaintiff"], a construction company that specializes in roof work, to repair the roof damage caused by the hailstorm. (*Id.* at ¶ 14.) In so doing, the Insured assigned all insurance policy benefits arising out of the roof repairs to Rooftop. (*Id.* at ¶¶ 14-15.) As a result, Rooftop "stepped into the shoes" of the Insured with respect to its claims against Nautilus for property damage arising from the 2018 hailstorm. (*Id.* at ¶ 16.)

The Nautilus policy at issue provides replacement cost value benefits for covered property losses. (*Id.* at ¶ 7; *see* Doc. No. 31-4.) The policy provision governing coverage obligates the insurer to "pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." (Doc. No. 31-4 at 23.) The 2018 hailstorm was a covered loss event under the policy. (Doc. No. 3 at ¶¶ 12-13.)

On April 21, 2020, Rooftop, as assignee, filed a claim with Nautilus regarding the hailstorm damage to the Property's roof, in accordance with the policy's terms. (Doc. No. 3 at ¶ 17.) Nautilus immediately opened an investigation into Rooftop's claim, but the parties were

apparently unable to reach an agreement as to the amount of loss. (*Id.* at ¶¶ 18-28.) After four months of impasse, on August 13, 2020, Rooftop elected to have the amount of loss determined through an appraisal process, by invoking the policy's appraisal provision. (*Id.* at ¶ 32.) That provision reads:

> **1. Appraisal**
> If we and you disagree on the . . . amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.
>
> The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the . . . amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
>
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

(*Id.* at ¶ 47; Doc. No. 25-1 at 3.)

On August 14, 2020, one day after invoking the appraisal process, Rooftop commenced this action against Nautilus, in Colorado state court, seeking to compel an appraisal, and asserting claims for breach of contract and statutory bad faith. (Doc. No. 3 at ¶¶ 33-62.) Rooftop alleges that Nautilus failed to properly investigate its claim for damage to the Property's roof resulting from the August 2018 hailstorm, and that it failed to pay, in full, the covered benefits necessary to repair that damage. (*Id.*)

On October 22, 2020, Nautilus removed the case to federal court, pursuant to 28 U.S.C. § 1332(a), based on diversity jurisdiction. (Doc. No. 1.) On November 30, 2020, the case was

stayed at the parties' request, so that the appraisal process set forth in the Nautilus policy could be completed. (Doc. No. 11.)

The parties' respective appraisers—Brian D. Beatty, on behalf of Nautilus, and David Phalen, on behalf of Rooftop—together with their selected umpire, Steven Meyrich, [collectively, the "Appraisal Panel"] thereafter commenced an appraisal, and on October 15, 2021, the parties filed the Appraisal Award with the Court. (Doc. No. 23; *see* Doc. No. 23-1.) The Appraisal Award, which is signed by Nautilus's appraiser and the umpire, set the amount to repair the damaged roof at $241,789.00 (for the actual cost value, or "ACV") and $361,954.56 (for the replacement cost value, or "RCV"). (Doc. No. 23-1.) Upon completion of the appraisal process, Nautilus paid Rooftop the ACV amount awarded, minus amounts already paid, for a net total of $143,118.74. (Doc No. 23 at 2.)

On October 15, 2021, the parties filed a Joint Status Report, notifying the Court that the appraisal process had concluded and that Nautilus had issued the additional payment to Rooftop. (Doc. No. 23.) In light of the Joint Status Report, on October 22, 2021, the Court issued a Minute Order, advising that the case remain stayed, but allowing the parties to file "any motions relating to the Appraisal Award itself." (Doc. 24.) The four present motions were then filed and briefed.

## ANALYSIS

### I. The Motions Directed at the Appraisal Award

The parties have filed competing motions, asking to either confirm or vacate the Appraisal Award. (Doc. Nos. 25, 32.) For efficiency's sake, the Court analyzes the two motions together.

Nautilus moves to confirm the Appraisal Award, arguing that the express terms of the policy's appraisal provision make the decision "binding." (Doc. No. 32 at ¶¶ 1-4.) In addition, Nautilus argues that the appraisal process is "sufficiently akin" to arbitration, such that it is governed by the Colorado Uniform Arbitration Act, Colo. Rev. Stat. §§ 13-22-201 *et seq.* ["CUAA"]. (*Id.* at ¶ 6.) Defendant requests a court order confirming the Appraisal Award under § 13-22-222 of CUAA, which provides:

> After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 13-22-220 or 13-22-224 or is vacated pursuant to section 13-22-223.

(*Id.* at ¶ 7 (citing Colo. Rev. Stat. § 13-22-222).) According to Nautilus, under CUAA, "any effort to vacate the award would require a formidable showing and would have to be based upon very limited grounds." (*Id.* at ¶ 6.) It contends that no such showing has been made here. (*Id.*)

Rooftop, other hand, is adamant that "appraisal is not arbitration," and therefore, "both the insurance company and the policyholder retain the right to challenge the appraisal award." (Doc. No. 31 at ¶¶ 1, 21-22; Doc. No. 32 at 8.) Plaintiff contends that the Appraisal Award must be vacated, either in whole or in part, because it does not comply with the policy's terms, or with Colorado law. (Doc. No. 31 at ¶ 1; Doc. No. 32 at 2-9.) In addition, Plaintiff argues that the umpire, Mr. Meyrich, and Defendant's appraiser, Mr. Beatty, each exhibited "incompetence and apparent bias" during the appraisal process, such that both individuals should be "disqualified." (Doc. No. 31 at ¶¶ 9-19; Doc. No. 32 at 9-10.)

To resolve the two competing motions directed at the Appraisal Award, the Court must construe the insurance policy at issue. Under Colorado law, which governs here,[1] an insurance policy must be enforced "as written unless the policy language contains an ambiguity." *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). As with any contract, the terms of the policy should be construed to give effect to the parties' intent. *Id.* "Whenever possible this intent should be ascertained from the plain language of the policy alone." *Mid-Century Ins. Co. v. Robles*, 271 P.3d 592, 594 (Colo. App. 2011). "[W]ords should be given their plain meaning according to common usage, and strained constructions should be avoided." *Compton v. State Farm Mut. Auto. Ins. Co.*, 870 P.2d 545, 547 (Colo. App. 1993).

In Colorado, an appraisal award issued under an insurance policy "is binding so long as the appraisers (including the umpire) have performed the duties required of them by the policy." *Andres Trucking Co. v. United Fire & Cas. Co.*, 488 P.3d 425, 433-34 (Colo. App. 2018). "As a general matter, an appraisal award entered by an umpire may be disregarded only if the award was made without authority or was made as a result of fraud, accident, or mistake." *Id.* at 434. It is well-settled that "legal determinations, including regarding coverage," fall outside the scope of the appraisal process. *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n ("Summit Park Townhome I")*, 100 F. Supp. 3d 1099, 1104 (D. Colo. 2015). Rooftop, as the party challenging the Appraisal Award here, bears the burden of demonstrating that the appraised amount should be set aside. *Andres Trucking*, 488 P.3d at 434.

---

[1] The Court's jurisdiction in this matter is based on diversity of citizenship. Therefore, Colorado substantive law applies. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).

As an initial matter, the parties devote large portions of their briefing to arguing whether the policy's appraisal process constitutes an arbitration proceeding under CUAA. However, the crux of the parties' dispute, more specifically, is the extent to which determinations made during the appraisal process are subject to subsequent court challenge. Nautilus argues that the policy's appraisal provision, by its terms, "binds the parties as to the amount of loss," and therefore, "is so similar to arbitration as to warrant confirmation of the Appraisal Award." (Doc. No. 39 at 1-3.) Nautilus contends that "any effort to vacate the award would require a formidable showing and would have to be based on very limited grounds." (Doc. No. 25 at 3.) Rooftop, by contrast, takes the position that the parties "retain the right to challenge" the Appraisal Award, because the policy "requires the appraisers and umpire to render their award in compliance with the policy," and because "[w]hat the policy contains is a question of law" that must be decided by the court. (Doc. No. 31 at ¶ 21.) Plaintiff suggests that, if either party disagrees with the determinations made during the appraisal process, "the remedy is to simply continue without appraisal." (Doc. No. 32 at 11.)

Here, the policy's appraisal provision states: "A decision agreed to by any two [of the appraisers and umpire selected] will be binding." (Doc. No. 25-1 at 3.) Rooftop argues that, notwithstanding this language, the appraisal process is nonbinding, because the last sentence of the appraisal clause provides: "If there is an appraisal, we [Nautlius] will still retain our right to deny the claim." (Doc. No. 31 at ¶ 21; *see id.*) However, Plaintiff's interpretation of the provision's final sentence, as allowing the insurance company to disregard the results of the appraisal process, "is misplaced and, if accepted, would render the earlier sentence in the clause meaningless." *Tae Hyung Lim v. Am. Econ. Ins. Co.*, No. 13-cv-02063-CMA-KLM, 2014 WL

1464400, at *3 (D. Colo. Apr. 14, 2014) (rejecting a plaintiff's identical argument regarding

identical policy language); *see Mapes v. City Council of City of Walsenburg*, 151 P.3d 574, 577

(Colo. App. 2006) (A court must "seek to give effect to all [contract] provisions so that none will

be rendered meaningless. . . . Any construction that would render any clause or provision

unnecessary, contradictory, or insignificant should be avoided."). Here, the policy's appraisal

provision, on its face, binds the parties in appraisal to determinations as to "the amount of loss."

(Doc. No. 25-1 at 3.) This means that "[n]either party is permitted to dispute the amount of loss

once it has been determined." *Lim*, 2014 WL 146440, at *3; *Auto-Owners Inc. Co. v. Summit

Park Townhome Ass'n ("Summit Park Townhome II")*, 129 F. Supp. 3d 1150, 1154 (D. Colo.

2015) (finding that an appraisal award results in a "binding factual determination" as to the

amount of loss); *Concept Restaurants, Inc. v. Travelers Indem. Co.*, No. 16-cv-00450-DME-

NYW, 2016 WL 8737773, at *3 (D. Colo. Dec. 2, 2016) (observing that courts in this District

have "reaffirmed that interpretation of Colorado law on multiple occasions"); *see also Wagner v.

Phoenix Ins. Co.*, 348 P.2d 150, 152 (Colo. 1960) ("In the instant case plaintiffs made demand

for the appointment of appraisers to determine the amount of the loss, and by so doing

irrevocably exercised their option to determine that question as provided by the appraisal clause

of the policy."). And, while the policy does not define the term, the plain meaning of "amount of

loss" necessarily includes a determination as to the cause of that loss. *BonBeck Parker, LLC v.

Travelers Indem. Co. of Am.*, 14 F.4th 1169, 1181 (10th Cir. 2021) ("[B]ecause we conclude that

the Colorado Supreme Court, if faced with the issue, would recognize that the ordinary meaning

of the phrase 'amount of loss' encompasses causation issues, the district court properly

interpreted the Policy to conclude that the [appraisal panel] could determine the cause of [the

insured's] roof damage."); *see also Phila. Indem. Ins. Co. v. WE Pebble Point*, 44 F. Supp. 3d 813, 817-18 (S.D. Ind. 2014) (observing that "it would be extraordinarily difficult, if not impossible, for an appraiser to determine the amount of storm damage without addressing the demarcation between 'storm damage' and 'non-storm damage'").

However, Plaintiff is correct that legal determinations, including issues of coverage, fall outside the scope of the appraisal process, and thus, are subject to judicial review. *Summit Park Townhome II*, 129 F. Supp. 3d at 1104. This is why, even after the appraisal, Nautilus still retains its "right to deny the claim." (Doc. No. 25-1 at 3.) "Typically, an issue is 'beyond the scope' if it involves a legal construction of the insurance policy itself (rather than a factual determination), such as whether a particular building is 'covered' under the policy." *Concept Rests., Inc. v. Travelers Indem. Co.*, No. 16-cv-00450-DME-NYW, 2016 WL 8737773, at *3 (D. Colo. Dec. 2, 2016); *Summit Park Townhome II*, 129 F. Supp. 3d at 1104 (observing that, "while appraisal could 'give figures for the value of the property,' it would resolve only 'a part of the overall dispute' between the parties; it would not resolve other issues, like whether the policy provided coverage for complete replacement of a particular roof"). An issue also falls outside the scope of the appraisal where the parties agree beforehand to limit or restrict that issue from the appraisal's scope. *Concept Restaurants*, 2016 WL 8737773, at *3 (citing *Laredo Landing Owners Ass'n v. Sequoia Ins. Co.*, No. 14-cv-01454-RM-KMT, 2015 WL 3619205, at *2 (D. Colo. June 10, 2015)).

"Colorado possesses a tradition of supporting alternative dispute resolution mechanisms when agreed to by the parties." *City & Cnty. of Denver v. Dist. Ct.*, 939 P.2d 1353, 1361 (Colo. 1997). "Although an appraisal process is not on all fours with arbitration, both are 'rooted in

similar policies of economy for the parties and judicial efficiency.'" *Laredo Landing Owners*, 2015 WL 3619205, at *2 (quoting *City & Cnty. of Denver*, 939 P.2d at 1363)); *see Summit Park Townhome I*, 100 F. Supp. 3d at 1103 ("A purpose of appraisal provisions is to avoid litigation and encourage settlement."). Given that the policy's appraisal provision binds the parties as to the amount of loss, the Court agrees with Nautilus that the appraisal process, in that regard, is properly characterized as an arbitration under CUAA. *See Lim*, 2014 WL 1464400, at *3 (holding that appraisal is arbitration under CUAA, because even though appraisal does not decide "every dispute between" the parties, they are "bound . . . as to the amount of loss"); *see also Garcia v. State Farm Mut. Fire & Cas. Co.*, No. 20-cv-02480-PAB-MEH, 2021 WL 4439792, at *2 (D. Colo. Sept. 27, 2021) (observing that courts in this District "have found that the appraisal process is properly considered as an arbitration under [CUAA]") (collecting cases); *but see Summit Park Townhome II*, 129 F. Supp. 3d at 1154 (holding that appraisal is not arbitration under CUUA, though acknowledging that appraisal would likely produce "certain binding factual determinations"). Therefore, similar to an arbitration agreement, the Court "must accord the parties a presumption in favor of appraisal and must resolve all doubts about the scope of the appraisal clause in favor of the appraisal mechanism." *Laredo Landing Owners*, 2015 WL 3619205, at *2 (D. Colo. June 10, 2015) (quoting *City & Cnty. of Denver*, 939 P.2d at 1364). Keeping this in mind, the Court proceeds with its analysis.

### A. Whether the Appraisal Award Violates the Policy and/or Colorado Law

Plaintiff argues that the Appraisal Award should be vacated, either in whole or in part, because it does not comply with the policy's terms. (Doc. No. 31 at ¶¶ 1-8.) Rooftop complains, specifically, that the award merely covers the cost for a new roof coating, and "omits any money

for the needed replacement" of the roof's underlayment,[2] which is wet. (*Id.* at ¶ 2.) According to Rooftop, the parties, their respective appraisers, and the umpire all agree that the wet underlayment "must be replaced" before a new coating can be applied to the Property's roof. (*Id.*) Rooftop claims that the policy's replacement cost coverage provisions obligate the insurer to pay for "a new roof surface of equivalent quality and longevity," which must include the cost of replacing the roof's wet underlayment. (*Id.* at ¶ 3.) Plaintiff argues that, because the Appraisal Award provides "less than a new roof surface properly installed over a dry underlayment," it violates the policy, and therefore, must be vacated. (*Id.* at ¶¶ 2-3.)

Nautilus, on the other hand, argues that the proposed repair underlying the Appraisal Award, *viz.,* a new roof coating, "is better than like kind and quality" for purposes of fixing the roof "as it existed at the time of the loss," and therefore, complies with the policy's terms. (Doc. No. 39 at 8-9.) Defendant stresses that, at the time of the 2018 hailstorm, the Property's roof was already twenty-three years old—*i.e.,* "at the end of, or near the end of, its useful life." (*Id.* at 8.) The insurer likewise points to evidence submitted by its experts during the appraisal process, which suggests that the roof's underlayment was not damaged by the 2018 hailstorm, but instead, resulted from "water infiltration" issues that were "pre-existing and longstanding." (*Id.* at 6-7.) Nautilus argues that, contrary to Rooftop's assertions, the policy's replacement cost coverage provisions do not require it to replace an "old roof" with a "new roof." (Doc. No. 39 at 8.)

The parties' dispute, here, concerns issues of coverage, which are beyond the scope of the appraisal process. The fundamental purpose of the appraisal process invoked by the parties was

---

[2] The underlayment of the roof is "a portion under the surface between the surface and interior ceiling," which "includes insulation and decking." (Doc. No. 31 at 2 n.2.)

to determine the "amount of loss" attributable to the 2018 hailstorm, *i.e.,* the nature and scope of the hailstorm's effects on the Property's roof and the resulting costs to remedy those effects. That is precisely what was determined. The parties' respective appraisers and their chosen umpire followed the policy's appraisal process and reached a determination as to the amount of loss. During that process, the Appraisal Panel determined that the 2018 hailstorm caused damage to the Property's roof *surface*, but the umpire and Defendant's appraiser each concluded that the damage to the roof's *underlayment* was not caused by that event. This was a determination that the appraisal panel was permitted to make. *See BonBeck Parker*, 14 F.4th at 1178, 1182 (noting that "as here, 'the causation question involves separating loss due to a covered event from a property's pre-existing condition'"); *Garcia*, 2021 WL 4439792, at *3 ("[W]hen an insurance provider made a determination that a hailstorm did not cause the damage the insured asserted was covered, the causation analysis was of the type that is contemplated by the appraisal process[.]") (internal quotations marks and alterations omitted); *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 893 (Tex. 2009) ("An appraisal is for damages caused by a specific occurrence, not every repair a home might need. . . . Any appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else."); *see also Wausau Ins. Co. v. Herbert Halperin Dist. Corp.*, 664 F. Supp. 987, 988-89 (D. Md. 1987) (presenting a hypothetical of a dispute subject to an appraisal provision in which the insured "was disputing that as a factual matter a larger area than that immediately damaged by the occurrence had to be repaired in order to repair the immediate damage itself[;] this would constitute an 'amount of loss' question"). Given their determination that the damage to the roof's underlayment was not

caused by the 2018 hailstorm, the Appraisal Panel appropriately determined the scope of repairs needed to fix the damaged portions of the roof's surface only.[3] *See Travelers Indem. Co. v. BonBeck Parker, LLC*, 223 F. Supp. 3d 1155, 1160 (D. Colo. 2016) ("[T]he question of what must be replaced in order to adequately repair the damage caused by the admittedly covered Event in this case . . . is a question of the extent or 'amount of loss,' and is therefore, appropriate for appraisal."); *Griffin v. State Farm Lloyds*, No. SA-20-CV-1198-OLG-HJB, 2021 WL 7184962, at *3 (W.D. Tex. Nov. 22, 2021) ("Ultimately, the issue of whether hail damage caused a certain amount of damage to Plaintiff's property, and whether the roof should be repaired or replaced, was proper for the appraisal to decide.").

Rooftop now challenges the Appraisal Panel's loss determination as though it were a coverage determination. It is not. In reaching a determination as to the amount of loss, the Appraisal Panel was not obligated to, and in fact, was prohibited from, construing the policy. The Appraisal Award reflects this fact, clarifying that: "This award is made without consideration of any deductible amount, prior payments and/or any provisions of the above policy, which might affect the amount of the insurer's liability thereunder." (Doc. No. 25-2.) Moreover, in contemporaneous communications with the parties' appraisers, the umpire stated that his loss determination was made without consideration of "extraneous coverage issues." (Doc. No. 37-2 at 3.) Whether the policy's replacement cost provisions obligate Nautilus to pay

---

[3] Plaintiff does not argue that the parties specifically tasked the Appraisal Panel with assessing damage that did not result from the 2018 hailstorm. *See Edward v. Great N. Ins. Co.*, No. 18-cv-1052-WJM-KLM, 2021 WL 307506, at *4-5 (D. Colo. Jan. 29, 2021) (vacating an appraisal award, where the umpire limited his loss analysis to only "the damage caused by the intrusive testing" to the plaintiffs' home, in direct contravention of the parties' request that he also appraise "the amount of the water damage claim"). Nor does Plaintiff argue, or present evidence showing, that the wet underlayment was, itself, caused by the 2018 hailstorm.

to replace the Property's entire roof, including those portions that were not damaged by the 2018 hailstorm, is a coverage issue that remains in dispute.[4] *See Summit Park Townhome I*, 100 F. Supp.3d at 1104 (holding that a dispute as to whether the policy required the insurer to pay to replace property that was not damaged in the hailstorm in order to achieve visual consistency was "a clear example of a coverage issue beyond the scope of appraisal"); *Fireman's Fund Ins. Co. v. Steele St. Ltd. II*, No. 19-1096, 2022 WL 39392, at *6 (10th Cir. Jan. 5, 2022) (rejecting the insurer's argument that the appraisal process necessarily implicated "legal questions of coverage," and stating that the appraisal's purpose was to resolve "overall, factual-causation issues" as to "whether the hailstorm's effects extend beyond or are distinct from the [wear and tear] that ordinarily would be intended or expected from the type of brick found on the Building and, relatedly, . . . the costs of remedying those effects"). That coverage dispute does not affect the enforceability of the Appraisal Award, which "only yield[ed] factual determinations related to the amount of loss associated with a given event – in this case, hail damage." *Owners Ins. Co. v. 11380 E. Smith Rd., LLC*, No. 17-cv-00346-PAB-MEH, 2021 WL 5579052, at *5 (D. Colo. Nov. 30, 2021) (quoting *Church Mut. Ins. Co. v. Rocky Mtn. Christian Church*, No. 20-cv-1769-WJM-KMT, 2021 WL 1922986, at *2 (D. Colo. May 13, 2021)). The parties remain free to litigate coverage issues, notwithstanding the appraisal process's completion.[5] *Summit Park*

---

[4] Plaintiff cites *Dupre v. Allstate Insurance Co.*, 62 P.3d 1024, 1030 (Colo. App. 2002) for the proposition that, where there is a covered loss under a replacement cost policy, the insurer must, as a matter of law, pay "the full cost to replace the roof." (Doc. No. 44 at 2.) Given that the parties' motions are directed at the Appraisal Award only, the scope of Defendant's payment obligations under the policy need not be decided at this time.

[5] The Court is mindful, however, that resolution of the parties' coverage disputes "may affect the utility" of the Appraisal Award. *Edward*, 2021 WL 307506, at *5 n.3; *see Summit Park Townhome I*, 100 F. Supp. 3d at 1104 (advising that, during the appraisal process, the parties' appraisers

*Townhome*, 100 F. Supp. 3d at 1103; *Andres Trucking*, 488 P.3d at 430 ("[A]n appraisal award, by itself, does not entitle either the insured or the insurer to judgment in its favor on the insured's claims of breach of contract or statutory bad faith.") (internal quotations marks omitted). Accordingly, the Court finds no basis to vacate the Appraisal Award due to its purported noncompliance with the policy's terms or Colorado law.

### B. Incompetence and/or Bias

Rooftop next argues that the Appraisal Award should be vacated, because the umpire, Mr. Meyrich, and the appraiser selected by Nautilus, Mr. Beatty, were incompetent and/or biased. (Doc. No. 31 at ¶¶ 9-19; Doc. No. 32 at 9-10.) Plaintiff asks that Mr. Meyrich and Mr. Beatty be disqualified, and alternatively, that the court "allow discovery on these issues." (Doc. No. 31 at ¶¶ 19-20.)

#### 1. Mr. Meyrich

Rooftop argues that Mr. Meyrich was not a "suitable" umpire, because he had "no roofing background." (*Id.* at ¶¶ 9-10.) Plaintiff complains that, due to his lack of roofing expertise, during the appraisal, the umpire was forced to choose between the two competing opinions of the parties' respective appraisers regarding the amount of loss, instead of reaching his own conclusions on that issue. (*Id.*) Plaintiff contends that Mr. Meyrich's resulting wholesale adoption of the opinion from Defendant's appraiser, Mr. Beatty, warrants Mr. Meyrich's retroactive disqualification from the appraisal. (*Id.* at ¶ 19.)

---

should each identify and calculate any "disputed costs" so that the court can later "either include or exclude them once it has determined whether the policy provides coverage for them," thereby enabling the parties "to avoid unnecessary discovery or additional appraisals").

The policy's appraisal provision requires the parties to each "select a competent and impartial appraiser." (Doc. No. 25-1 at 3.) The two selected appraisers, in turn, must "select an umpire." (*Id.*) The policy is silent as to the competency requirements of the umpire, if any.

In challenging the umpire's qualifications, Plaintiff cites two recent decisions from this District, *Owners Insurance Co. v. 2430 South Havana, LLC*, No. 20-cv-01299-RBJ, 2020 WL 3839848 (D. Colo. July 8, 2020), and *Krum v. Chubb, Ltd.*, No. 20-cv-03616-RM-GPG, 2021 WL 1564794 (D. Colo. Apr. 21, 2021). (Doc. No. 31 at ¶¶ 10-11; Doc. No. 32 at 9-10.) In *2430 South Havana*, which involved a dispute regarding the selection of an umpire for an appraisal of hailstorm damage to a building, the insurance company sought to appoint an umpire with subject matter expertise, while the policyholder sought to appoint an umpire with mediation expertise. 2020 WL 3839848, at *1. There, the court ultimately sided with the insurance company, reasoning that, given the appraisal's underlying purpose, an umpire with roof repair and property damage expertise, as opposed to arbitration or mediation experience, "makes sense." *Id.* at *3. In *Krum*, which involved a similar dispute regarding the selection of an umpire, the court likewise found that an individual with subject matter expertise was "the most suitable person" to serve in that position. 2021 WL 1564794, at *1-2. However, unlike in *2430 South Havana* and *Krum*, in this case, the parties' respective appraisers agreed to the selection of Mr. Meyrich as umpire. Notably, Rooftop makes no argument suggesting that its appraiser, Mr. Phalen, lacked knowledge of Mr. Meyrich's qualifications at the time of his selection. Nor does Rooftop claim that Mr. Phalen was somehow misled regarding the umpire's particular expertise. Given that the selection process itself safeguarded against an unqualified umpire, and the umpire's suitability

was not challenged during the selection process, the Court sees no reason to disturb the Appraisal

Award based on *post hoc* challenges to Mr. Meyrich's lack of qualifications.

### 2. Mr. Beatty

Plaintiff next contends that Defendant's appraiser, Mr. Beatty, exhibited improper bias

during the appraisal process, which warrants his disqualification. (Doc. No. 31 at ¶¶ 12-13; Doc.

No. 32 at 10.) Specifically, Rooftop complains that, after the appraisal process commenced, Mr.

Beatty demanded and obtained a revised cost of repair estimate from Nautilus's retained expert,

Golden Forensics, that excluded the cost to replace the wet underlayment. (Doc. No. 31 at ¶ 12.)

Rooftop argues that the revised estimate was "a fiction," and it suggests that Mr. Beatty's actions

show that he and Nautilus "were using appraisal as a tool for advocating together." (*Id.* at ¶ 13.)

The appraisal provision expressly requires that the appraisers be "impartial." (Doc. No.

25-1 at 3.) Neither party directs the Court to a policy definition of the term "impartial."

However, the Colorado Supreme Court, in construing identical policy language, recently

clarified the role of the appraiser in valuation disputes, making clear that an "impartial" appraiser

must be "unbiased, disinterested, without prejudice, and unswayed by personal interest, [and]

must not favor one side more than another." *Owners Ins. Co. v. Dakota Station II Condo. Ass'n,*

*Inc.*, 443 P.3d 47, 51 (Colo. 2019). In evaluating an appraiser's impartiality under this standard,

it is important to "distinguish between advocating for a party and explaining a position." *Id.* at 53

n.5. As the Colorado Supreme Court has explained:

> An appraiser can certainly explain her position without running afoul of the
> provision's impartiality requirement. An appraiser may, for example, defend
> her choice of methodology or use of certain data. Conversely, an appraiser may explain
> why she feels another appraiser's methodology or use of data is wrong. In neither
> instance would the appraiser necessarily be acting as an advocate *on behalf of* a
> party to the dispute. An appraiser advocates *for* or *on behalf of* a party when her

actions are motivated by a desire to benefit a party. For example, if an appraiser simply seeks top dollar for a client, that is improper. In contrast, explaining a position or defending a choice in methodology can be motivated by a desire to reach an accurate outcome.

*Id.* (emphasis in original).

Here, Rooftop argues that Mr. Beatty was improperly advocating on behalf of Nautilus when he obtained a revised cost of repair estimate that omitted the cost for replacement of the wet underlayment. However, Rooftop offers no facts suggesting that Mr. Beatty's actions in doing so were motivated by his desire to benefit Nautilus, rather than his own belief that the damage to the roof's underlayment was unrelated to the 2018 hailstorm. The Court declines to vacate the Appraisal Award based on speculation as to Mr. Beatty's purported bias.

### C. The Appraisal Award Must be Confirmed

On this record, then, Plaintiff has failed to articulate a basis under which the Appraisal Award can be vacated under the policy or otherwise. *See Slavin v. Garrison Prop. & Cas. Ins. Co.*, No. 14-cv-01839-LTB-KMT, 2016 WL 9735789, at *4 (D. Colo. Sept. 21, 2016) (denying a plaintiff's motion to vacate an appraisal award for that reason); *c.f. Edward*, 2021 WL 307506, at *5 (vacating an appraisal award, where the umpire "improperly and unilaterally reduced the scope of the appraisal to a single issue"); *see also Aetna Ins. Co. v. Murray*, 66 F.2d 289, 290 (10th Cir. 1933) (noting that the plaintiff could challenge the award if it could establish "by clear and convincing evidence . . . fraud, gross mistake, misconduct of the appraisers, or their failure to perform the duties committed to them by the agreement or submission"). Nor has Plaintiff articulated any basis to modify the Appraisal Award, which conclusively establishes the amount of loss resulting from the 2018 hailstorm, and thus, is binding on the parties. *See Por Boy Stores, Inc. v. Travelers Cas. Ins. Co.*, No. 20-cv-00990-RM-MEH, 2022 WL 2064930 (D. Colo. June 8,

2022) (holding that an appraisal award conclusively established the amount of loss to the plaintiff's property caused by a hailstorm, and therefore was binding on the parties); *see also Andres Trucking*, 488 P.3d at 434 ("The burden of demonstrating that the appraised loss amount should be set aside falls on the party challenging it."). Therefore, the Motion to Confirm is **GRANTED**, and the Motion to Vacate is **DENIED**.

## II. The Remaining Motions

This case was stayed, on November 30, 2020, pending resolution of the appraisal process. (Doc. No. 11.) On October 22, 2021, the Court issued a Minute Order, extending the stay, "except for any motions related to the Appraisal Award itself." (Doc. No. 24.) Purportedly in accordance with that Minute Order, on November 30, 2021, Plaintiff filed a motion to amend its complaint under Federal Rule of Civil Procedure 15(a)(2), though conceding that its request to do so was "premature." (Doc. No. 34.) On December 20, 2021, Defendant filed a motion to strike Plaintiff's motion to amend, pursuant to Federal Rule of Civil Procedure 12(f). (Doc. No. 38.) Defendant argues that Plaintiff's motion to amend "is not a motion relating to the Appraisal Award itself," and therefore, violates the Court's stay. (*Id.* at ¶ 4.)

Federal Rule of Civil Procedure 12(f) provides, in pertinent part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." By its terms, Rule 12(f) applies only to matters contained in a "pleading." Pleadings, as defined by Rule 7(a), are different from "motions and other papers."[6] "[T]here is no provision in

---

[6] Under Rule 7(a), only the following documents constitute pleadings: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-part complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a).

the Federal Rules of Civil Procedure for motions to strike motions and memoranda." *Searcy v. Soc. Sec. Admin.*, No. 91-4181, 1992 WL 43490, at *2 (10th Cir. Mar. 2, 1992); *see* 2 James Wm. Moore et al., Moore's Federal Practice § 12.37[2] (3d ed. 2004) ("Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.); *see also Bunn v. Perdue*, 966 F.3d 1094, 1099 (10th Cir. 2020) ("Generally, . . . motions, briefs, and memoranda may not be attacked by a motion to strike."). Because Defendant's motion to strike is directed at a motion, Rule 12(f) does not apply.

Nevertheless, the court has "great discretion regarding control of the docket and parties." *Bunn*, 966 F.3d at 1099. The court may strike filings that are not allowed by local rules. *Id.* at 1100 (affirming a district court's *sua sponte* order striking a motion to vacate that violated local rules). The court likewise retains discretion to strike frivolous motions, or materials filed in contravention of the court's orders. *See, e.g.*, *Wisehart v. Wisehart*, No. 21-1148, 2021 WL 5895130, at *2 (10th Cir. Dec. 14, 2021) ("[A] district court may sua sponte strike a frivolous motion under its inherent power to control its docket."); *Dubrovin v. The Ball Corp. Consol. Welfare Benefit Plan for Emps.*, No. 08-cv-00563-WYD-KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009) (granting a motion to strike documents filed by the plaintiff that the court previously ruled "may not be relied on"); *United States v. Durango & Silverton Narrow Gauge RR Co.*, No. 19-cv-01913-REB-NRN, 2020 WL 9432882, at *2 (D. Colo. July 14, 2020) ("Courts in this district have relied on [their] discretion to strike non-conforming filings.").

Here, the Court agrees with Defendant that Plaintiff's motion to amend is not "a motion directed at the Appraisal Award itself," and thus, was not allowed under the Court's stay order, which remains in effect. (Doc. Nos. 24, 46.) Moreover, in light of this Order, it appears that at

least some of Plaintiff's proposed amendments, particularly those directed at the Appraisal Award, are likely moot and/or futile. *See Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) ("Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile."). Accordingly, pursuant to its discretionary authority, the Court finds it appropriate to strike Plaintiff's motion to amend, though without prejudice to a refiling at the appropriate time.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT**:

(1) "Defendant's Motion to Confirm Appraisal Award" (Doc. No. 25) is **GRANTED**.

(2) "Plaintiff's Motion to Vacate or Partially Disregard Appraisal Award and Proceed to Trial on Limited Issues Not Resolved by Appraisal (Including Motion to Set Aside or Vacate Appraisal Award" (Doc. No. 32) is **DENIED**.

(3) "Defendant Nautilus Insurance Company's Motion to Strike Plaintiff's Motion to Amend Complaint" (Doc. No. 38) is **GRANTED**.

(4) "Plaintiff's Motion to Amend Complaint" (Doc. No. 34) is **STRICKEN without prejudice**.

(5) The stay is **LIFTED**.

(6) On or before **October 19, 2022**, the parties shall file a joint status report, advising the

Court as whether a proposed scheduling order deadline should be set.

DATED: September 28, 2022.

BY THE COURT:

Maritza Dominguez Braswell
United States Magistrate Judge